UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra L. Miller,                                                                                                                Civil No. 06-468 (PAM/JJG)

Plaintiff,

v.                                                                                                  **MEMORANDUM AND ORDER**

United of Omaha Life Insurance
Company, as Claim Administrator
of the Group Life and Group
Voluntary Term Life Benefit Plans,

                                   Defendant.

This matter is before the Court on cross-Motions for Summary Judgment filed by Plaintiff Sandra L. Miller ("Miller") and Defendant United of Omaha Life Insurance Company ("United").[1] For the reasons that follow, the Court denies Miller's Motion and grants United's Motion.

**BACKGROUND**

This case arises from a dispute over supplemental life insurance benefits. Miller was the wife of the Harlan Miller, who was an employee of The Miner Group, Limited ("Miner")

---

[1] Miller commenced this action against both United and The Miner Group, Limited ("Miner") for (1) judicial review of benefit denial under 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duty by refusing to refund unnecessary premium payments under 29 U.S.C. § 1132(a)(3)(B)(i) and (ii). Miner later cross-claimed against United and filed third-party claims against Employers Association, Inc. and Administration Resources, Inc. In March 2006, Miner stipulated to the dismissal of its third-party claim against Administration Resources, Inc. In June 2006, based on a stipulation between Miller and Miner, the Court dismissed all claims against Miner, as well as the cross-claims and third-party claims asserted by Miner against United and Employers Association, Inc.

until January 31, 2003. As one of his employment benefits from Miner, Harlan Miller obtained basic life insurance coverage ("basic coverage") under a policy that Miner obtained from Fortis Insurance Company ("Fortis"). The basic coverage under the Fortis policy was for 100% of the employee's annual pay, subject to a maximum amount of $50,000. The Fortis policy also gave employees the option of paying for additional supplemental insurance ("voluntary coverage"), subject to a maximum amount of $50,000. Harlan Miller did not enroll in the voluntary coverage while he was actively employed by Miner. Thus, when Miner laid off Harlan Miller on January 31, 2003, he had only basic coverage under the Fortis policy.

On March 1, 2004, Miner switched insurance companies, changing from Fortis to United. In addition to its own basic coverage policy, United also provided voluntary coverage for eligible employees. Both the United and Fortis policies set forth eligibility prerequisites for voluntary coverage. Specifically, both required that an employee be actively employed by regularly working for Miner at least thirty hours each week. (MILL0070-71.) The United policy also provided that if an individual was not actively working on the day insurance would otherwise begin, "the insurance will begin on the first day of the policy month which coincides with or follows the day you return to active work." (MILL0073.) In addition, the policy provided that an individual could not increase the amount of his or her insurance after the day he or she was no longer actively employed. (Id.)

When the change in insurance companies occurred, Harlan Miller continued his basic coverage of $43,000. (Miller Aff. ¶ 4.) In addition, he elected voluntary coverage of

2

$100,000.  (Id.)  Miner provided United with a list of individuals whom it felt were entitled to coverage under the United policy.  Harlan Miller's name was included on the list for both basic and voluntary coverage.  When United received the list, it advised Miner of outstanding issues that needed to be resolved regarding questionable eligibility for certain individuals, including Harlan Miller.  (Strong Aff. ¶ 3.)  Nonetheless, it issued a certificate of insurance in Harlan Miller's name.

Harlan Miller made monthly premium payments for the voluntary coverage from the election date through the date of his death on August 4, 2004.  (Miller Aff. ¶ 4.)  He believed that the coverage he elected and paid for was in place.  He investigated other coverage through other insurance companies, but abandoned those alternatives based specifically on the representation that he was fully covered under the United policy.  (Id. ¶ 10.)

However, in the meantime, United confirmed that Harlan Miller was not eligible for voluntary coverage.  United recalculated Miner's premium bills accordingly, and it communicated that information to Miner.  It neither billed nor collected premiums arising out of voluntary insurance for Harlan Miller.  (Strong Aff. ¶¶ 4-5.)

After Harlan Miller died, United paid Miller $43,000 in basic coverage benefits.  However, it has refused to pay for any voluntary coverage benefits.  Miner wrote to Miller and explained that Harlan Miller was allowed to continue only the life insurance that was in force when he was laid off and that it mistakenly allowed him to elect voluntary coverage when Miner switched to United.

**DISCUSSION**

At issue is a benefit denial claim against United under 29 U.S.C. § 1132(a)(1)(B). Relying on Minnesota Statutes § 61A.092 and § 60A.082, Miller argues that a new insurer must give anyone who had any coverage from a prior carrier the option to select the same benefits.[2]  Section 61A.092 provides:

> A group insurance policy that provides post termination or layoff coverage as required by this section must also include a provision allowing a covered employee, . . . at the expiration of the post termination or layoff coverage . . . to obtain from the insurer offering the group policy, at the employee's . . . option and expense, without further evidence of insurability and without interruption of coverage, an individual policy of insurance contract providing the same or substantially similar benefits.

Minn. Stat. § 61A.092.  Before the layoff, Harlan Miller had opted only for basic coverage under the Fortis policy.  United has paid Miller the basic coverage benefits and therefore satisfied the requirements of § 61A.092.  Thus, the pending Motions turn on the interpretation of § 60A.082:

> A person covered under group life . . . insurance, shall not be denied benefits to which the person is otherwise entitled solely because of a change in the insurance company writing the coverage or in the group contract applicable to the person.  In the case of one or more carriers replacing or remaining in place after one or more plans have been discontinued, each carrier shall accept any person who was covered under the discontinued plan or plans without denial of benefits to which other persons in the group covered by that carrier are entitled.
> . . .

---

[2] United is seeking summary judgment only on the claims based on § 61A.092 and § 60A.082. At the hearing on the pending Motions, the parties confirmed that a claim based on an estoppel theory remains.

Minn. Stat. § 60A.082.  Pursuant to § 60A.082, the Department of Commerce promulgated Regulation 2755.0500, <u>Liability of Succeeding Carrier</u>,[3] which provides in relevant part:

> Subpart 1: Coverage under succeeding carrier's plan.  Each individual who is eligible under the succeeding carrier's plan, with respect to provisions regarding class eligibility, activity at work, and nonconfinement, shall be covered by the succeeding carrier's plan of benefits as of the effective date of that plan.
>
> Subpart 2: Coverage for individuals not eligible under subpart 1.  Each individual who is not eligible for coverage in accordance with subpart 1 shall nevertheless be covered by the succeeding carrier in accordance with the following rules, provided that such individual . . . was validly covered under the prior plan on the date it was discontinued and such individual is a member of a class of individuals otherwise eligible for coverage under the succeeding carrier's plan.
>
>> A.  The minimum level of benefits that shall be provided by the succeeding carrier shall be <u>the lesser of</u> the benefits available under the prior carrier's plan reduced by any benefits payable by the prior carrier, <u>or</u> the benefits available under the succeeding carrier's plan.

Minn. Reg. 2755.0500 (emphasis added).

Harlan Miller was not eligible under United's voluntary coverage plan because he was not actively employed.  Thus, Subpart 1 is inapplicable.  Subpart 2 required United to cover Harlan Miller if he was covered under the Fortis plan on the date the Fortis plan was discontinued, notwithstanding his ineligibility under the terms of the United policy.  Subpart 2 supports the conclusion that United was obligated to make the $43,000 basic coverage benefits payment that it made.  If Harlan Miller had opted for voluntary coverage benefits while

---

[3] The regulation is intended "to indicate which carrier is responsible for coverage in those cases where one carrier's plan of benefits replaces a prior plan which offered similar benefits." Minn. Reg. 2755.0300.

he was actively employed (and therefore had been eligible for such benefits under the terms of the Fortis policy), then Subpart 2 would also have required United to pay the voluntary coverage benefits as well. However, since Harlan Miller was not validly covered for any voluntary coverage under the Fortis plan on the date it was discontinued, United was not obligated to pay Miller any voluntary coverage benefits.

Sub-paragraph A also shows that United had no obligation to pay Miller any voluntary coverage benefits. Sub-paragraph A requires United to provide the lesser of the benefits available under the Fortis plan (reduced by any benefits payable by Fortis), or the benefits available under the United plan. Because Harlan Miller was not eligible for voluntary coverage benefits under either the Fortis or the United policies, sub-paragraph A did not require United to provide voluntary coverage to Harlan Miller.

**CONCLUSION**

United satisfied the requirements of Minn. Stat. § 61A.092 when it paid basic coverage benefits to Miller. It was not required to pay voluntary coverage benefits under Minn. Stat. § 60A.082 because Harlan Miller never opted for those benefits while actively employed under the Fortis plan. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Docket No. 8) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Docket No. 45) is **GRANTED**;

and

3. The only issue that remains is whether United was estopped from denying voluntary coverage benefits.

Dated: August 9, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
